## Case No. 3,132.

### CONSOLIDATED FRUIT-JAR CO. v. WHITNEY et al.

[1 Ban. & A. 356;[1] 10 Phila. 268; 31 Leg. Int. 229.]

Circuit Court, D. New Jersey. June, 1874.

APPORTIONMENT BY LICENSEE OF PATENT—INJUNCTION—MODIFICATION.

1. A mere license is not apportionable, so as to permit the licensee to grant to others separate rights to use or work the patent, by subdividing the rights that may have been granted to himself. Brooks v. Byam [Case No. 1,948], commented on and followed.

[Distinguished in Adams v. Howard, 22 Fed. 658.]

2. The patentee gave to A, and his assigns, a license to manufacture and sell the Mason fruit jar, patented September 24, 1872, within a specified territory. Afterwards, the patentee assigned the patent, and all his rights thereunder, to the complainant. Held, that a transfer by A, of a portion of the rights and privileges secured to him by the license, was void, as against the complainant, even if the complainant's assignment was held subject to the prior license.

[Cited in Racine Seeder Co. v. Joliet Wire-Check Rower Co., 27 Fed. 376.]

3. Where, upon the filing of a bill for the infringement of a patent, an injunction order has been granted, restraining the defendant, pendente lite, from manufacturing and selling

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

the patented article; and an application, on behalf of the defendant, is made to the court, to modify the injunction, by permitting the defendant to manufacture a limited number of the patented articles, with which to complete contracts between the defendant and third parties; and, as a condition to the modification, the defendant offers to file a bond, to secure complainant against loss occasioned thereby; and it appears, from the papers used upon the application, that the defendant is the assignee of a part only of the rights, secured to his assignors by license from the patentee, and that, at the time of the assignment to the defendant, a suit was pending in New York, between the present complainant and the assignors of the defendant, wherein the relief sought was to have the license from the patentee to the defendant's assignors held fraudulent and void, of which suit the defendant admitted having, at some time, received actual notice: *Held*, that the absence, in the moving papers, of sufficient proof, that the notice to the defendant of the pendency of the former suit was subsequent, and not prior, to the making of the contracts which the defendant now desires to carry out, is fatal to the defendant's motion, and, that the papers did not present a proper case for the exercise of the equitable powers of the court.

[Cited in Tobey Furniture Co. v. Colby, 35 Fed. 594.]

4. The rule that where the complainant has established a right to an injunction, the defendant cannot defeat it by tendering security for damages, is applicable to patent cases.

[In equity. On bill filed [by the Consolidated Fruit-Jar Company] for an account, and to restrain defendants [Thomas W. Whitney and others] from the use of letters patent No. 131,695, granted to John L. Mason Sept. 24, 1872, under a license alleged to have been fraudulently granted, an injunction order was made by virtue of the 7th section of the act to further the administration of justice, approved June 1st, 1872 (17 Stat. 197), enjoining the defendants from making or vending any fruit jars containing the improvements secured by said letters patent, until the decree of the court upon the motion for an injunction. Application made to the court to modify the injunction order, so as to allow defendants to complete certain contracts for jars, upon the tender of security to the complainants for all damages, and on the affidavit of one of the defendants, that they had purchased the right to manufacture and sell under the license in good faith, and without notice of the alleged fraud.][2]

A. Q. Keasbey, for complainant.
Abram Browning, for defendant.

NIXON, District Judge. Application is made to the court, to modify the injunction order, granted on filing the bill in the above stated case.

The application is based on the ground, that the defendants, in good faith, purchased the right to manufacture and sell the jars or bottles, described in the Mason patent; that, in like good faith, they have entered into contracts with sundry person to fur-

nish such jars or bottles, upon specified terms, and within or at certain times, which contracts are only partially executed; and, that if they are now restrained from fulfilling them, they will be subjected to serious losses, damages, etc. The modification asked for is, that the defendants may be allowed six weeks to carry out all unexecuted contracts, not exceeding the manufacture and delivery of fifteen hundred gross of said jars or bottles, on their indemnifying the complainant, against any loss or damage which it may sustain, by reason of their completing the same.

As the case now stands, there are two reasons why the court is precluded from granting this request: 1. It does not appear upon the face of the papers, that the defendants have acquired any rights to manufacture and sell under these patents. All the authority they have, is derived from the agreement entered into, during the month of December, 1873, between the Standard Union Manufacturing Company and the defendants, while the suit was still pending against the individuals who principally formed and constituted the said company. If I have not mistaken the purport of that agreement, its design was, to convey to the defendants, for a valuable consideration, the exclusive right to make and sell the Mason patent fruit jar, patented September 24, 1872, and known in the market as the Mason jar of '72, in the city of Philadelphia, and at all places within fifty miles of said city, and also in the city of Baltimore. Conceding, for the purposes of this motion, that the paper executed by John L. Mason to John K. Chase, November 13, 1872, is a valid instrument, so far as the rights of these defendants are concerned, who are bona fide purchasers under it, without notice of any fraud, yet, it must be borne in mind, that such paper does not purport to be an assignment of the invention, but a mere license to exercise the privileges secured by the patent. It is not claimed that the Standard Union Manufacturing Company had more than the rights of a licensee, and, while it is an open question, whether a license to a party and his assigns is a personal privilege, or whether it confers the power of assignment, in its entirety, to third persons, it seems to be understood, that a mere license is not apportionable, so as to permit the licensee, as is attempted in the present case, to grant to others, separate rights to use or work the patent, by subdividing the rights that may have been granted to himself. Curt. Pat. § 213; Brooks v. Byam [Case No. 1,948].

The case of Brooks v. Byam, supra, was this: A patentee of friction matches, by deed under seal, granted, sold, assigned, and transferred to B, his executors, administrators, and assigns, the right and privilege of making, using, and selling the friction matches patented; and to have and hold the right and privilege of manufacturing the said

[2] [From 31 Leg. Int. 229.]

matches, and to employ in and about the same six persons, and no more, to vend 'them in any part of the United States. Judge Story was in doubt, whether the license was not such a personal privilege, that the entirety could not be assigned, notwithstanding it was given to B and his assigns, and left the question open, because it was not necessary, in that case, to decide it. He held, however, that the right granted by the above deed, was a license or authority, coupled with an interest in the execution, to the grantee and six persons to be employed by him in making matches; that the right was an entirety, incapable of being apportioned or divided among different persons; and that, therefore, an assignment by B, of a right to make as many matches as one person could roll up, was void.

The learned judge, in his opinion (page 545), pertinently remarks: "The language ought, in my judgment, to be exceedingly clear that should lead a court to construe an instrument of this sort, granting a single right or privilege to a particular person or his assigns, as also granting a right or license to split up the same right into fragments among many persons in severalty, and thus to make it apportionable as well as transmissible. The patentee might well agree to convey a single right as an entirety, to one person, to manufacture the matches, and employ a fixed number of persons under him, when he might be wholly opposed to apportioning the same rights in severalty among many persons."

On the other hand, it appears by the bill of complainant, that on the 6th of January, 1873, Mason executed assignments to the complainant, of the legal title to the patents —the right to the monopoly embraced in the inventions. Admitting that this is held subject to the license granted to Chase, the attempted apportionment of the authority to the exercise of the license between the grantees of Chase and the defendants, must be treated as void, against the complainant.

2. The other ground, on which the court should refuse to modify the injunction order, appears, by considering the defective character of the affidavits, on which the motion is founded.

The bill charges, that the complainant brought a suit, in the courts of New York, to declare the license from Mason to Chase fraudulent and void, that the rights of the defendants were acquired pendente lite; and, that the defendants had actual notice of the pendency and character of said suit.

The only defendant that filed an affidavit is Samuel A. Whitney, who states, that neither he, nor his brother, the other defendant, had anything, or very little, to do with entering into said agreement; and, had no acquaintance with John L. Mason, the president of the Standard Union Manufacturing Company, by whom, on the part of that company, the said agreement was wholly made;

that, on the part of the defendants, one Thomas W. Synnott, who was, at the time, and long before and ever since has been, their agent and clerk, conducted all the negotiations with the said Mason that led to the agreement, which, when concluded upon, was drawn up by said Synnott, and by him delivered to defendants for approval and execution; and that, on its approval and execution, it was assumed, without inquiry or doubt on their part, that the said company were the true, legal, and bona fide owners of the said letters patent and the extensions thereof, and had full power and authority to grant a license to said defendants, to manufacture and sell said bottles or jars, to the extent agreed upon in the said articles of agreement; and that, so far as he knows and believes, the said Synnott, as the agent of the defendants, acted upon the like assumption of ownership and right of said company, and, in like good faith, in negotiating and effecting the said agreement. He further admits, that, since the agreement was entered into, and contracts for manufacturing quantities of jars or bottles were made by the defendants in good faith, he received notice of the suit in the city of New York, involving the right of the Standard Union Manufacturing Company to said letters patent, or some of them, and the extensions thereof, but he fails to make any statement in regard to the essential fact, whether the large contracts for the sales of bottles or jars to third parties, which they now ask the privilege to carry out, were entered into prior or subsequent to the notice and knowledge of said suit. This is an appeal to the court for the exercise of its equitable powers, to relieve parties from the harshness of the rigid application of legal rules and principles, and before the court can interfere, some equitable reason should be clearly revealed. Whatever relief, under this head, the defendants might be entitled to, in regard to contracts made by them before they had notice of the-alleged fraudulent title of their grantors, they have no claim to be relieved from the consequences of their engagements and contracts, after such notice. The absence of all information, as to the respective dates of the notice of the pending suit, and of the contracts sought to be exempted from the restraints of the injunction order, is significant, and, in default of explanation, is fatal to the motion.

It was suggested, by the affidavit of the defendant, Mr. Whitney, and by the counsel of the defendants, at the hearing, that the defendants were able and willing to give their bond, with security if required, to indemnify the complainant against any loss or damage it may sustain, by reason of their being allowed to complete the said contracts.

But, it seems to me, that this case comes clearly within the spirit of the rule, now so well established, that where a case reveals the right in the complainant to the protection afforded by an injunction, the

defendant cannot defeat it by tendering security for damages. Sickles v. Mitchell [Case No. 12,835]; Hodge v. Hudson R. R. Co. [Id. 6,560]. In patent cases, especially where the owner depends upon the use of the invention, and the monopoly which the ownership affords, for his gains and profits, and not upon the sale of licenses to others, it is impossible to afford adequate protection by a bond of indemnity, because, there are no sufficient data existing, on which the damages or profits can be estimated.

The injunction order in this case was granted by virtue of the provisions of the seventh section of the "act to further the administration of justice," approved June 1, 1872 (17 Stat. 197). Whether it will result in granting a provisional injunction, depends upon the answer or the affidavits of the defendants, on the hearing. In the mean time, the law vests the court with discretion, as to compelling the complainant to give security to the defendants for the losses which they may sustain by reason of the injunction order, if it should afterward appear that they had the right to use the patents in question.

As there are no charges of actual fraud against the defendants, I am disposed to entertain a motion, in their behalf, to require the complainant to give such security to the defendants, and will hear their counsel, at any time, in regard to the amount of the penalty of the bond to be executed, on proof of notice to the complainant of such application.